UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

PAUL ALLEN PEREZ, individually and on behalf of all others similarly situated,

Plaintiff,

v.

JACKSON HEWITT, INC., and REPUBLIC BANK & TRUST COMPANY,

Defendants.

NO.

**CLASS ACTION COMPLAINT**

JURY TRIAL DEMAND

Plaintiff Paul Allen Perez, a member of the United States Navy ("Plaintiff"), and a Washington resident, on his behalf and on behalf of all others similarly situated, alleges the following based upon personal knowledge and upon information and belief from the investigation of his counsel as to all other matters, and brings this Class Action Complaint against Jackson Hewitt, Inc., and Republic Bank & Trust Company (collectively "Defendants"), alleging as follows:

## NATURE OF THE ACTION

1. This Complaint seeks to protect active-duty military service members and their families from Jackson Hewitt's unlawful lending practices which violate the Military Lending Act, 10 U.S.C. § 987, *et seq.* ("MLA").



TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

2. The MLA was enacted to protect United States active-duty service members and their dependents (collectively, "Covered Members") from predatory or unlawful lending practices. Such practices endanger our nation's military readiness and are detrimental to service member retention, morale, household stability, security clearances, and career advancement.

3. Defendant Jackson Hewitt Inc. is one of the nation's largest providers of in-person and online tax return preparation and electronic filing services. Through its tax preparation platform, Jackson Hewitt markets and facilitates short-term, refund-based consumer loans known as Refund Anticipation Loans ("RALs"), including Early Tax Refund Advance ("ETRA") loans and No Fee Tax Refund Advance ("NFTRA") loans. These products allow taxpayers to receive a portion of their anticipated federal tax refund shortly after filing—often within one day—by extending credit that is repaid directly from the borrower's tax refund.

4. These loans are repaid by a covered borrower's anticipated federal income tax refund, which is intercepted and applied to the loan balance when the refund is issued by the Internal Revenue Service.

5. Jackson Hewitt's Refund Anticipation Loans ("RALs"), including Early Tax Refund Advance ("ETRA") and No Fee Tax Refund Advance ("NFTRA") loans, are issued by partner financial institutions such as Republic Bank & Trust Company ("Republic Bank"), but are marketed, facilitated, and integrated into the tax preparation and filing process controlled by Defendants.

6. Defendants' RAL products are inseparable from a web of required tax preparation, refund processing, and banking relationships that generate revenue, even where Defendants market certain loan products as "no-fee" or "0% APR."

7. Consumers who apply for and receive RALs must agree to have their tax refunds processed through accounts or mechanisms designated and controlled by Defendants and their banking partners as a condition of receiving loan proceeds.



TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

8. The loan disclosures and agreements expressly provide that repayment of the RAL will occur automatically through deduction from the borrower's federal tax refund, requiring the borrower to authorize Defendants and their partners to access and control those funds.

9. Although Defendants may represent that certain RAL products carry no interest or stated loan fees, repayment is structured through refund processing systems and intermediary accounts over which Defendants and their partners exercise control, enabling the extraction of value from the transaction.

10. For ETRA loans, Defendants impose finance charges and disclose an annual percentage rate of approximately 35.96% based on a short loan duration, while for NFTRA loans, Defendants characterize the loans as "0% APR" despite the presence of associated fees and conditions tied to the tax preparation and refund process.

11. These required structures enable Defendants to extract value through fees, charges, and financial arrangements tied to tax preparation and refund processing, which reduce the consumer's tax refund and function as charges incident to the extension of credit. These costs are integral to the RAL program and disproportionately impact service members and their families.

12. Thus, even where Defendants advertise certain RAL products as "0% APR," the true cost of credit—when accounting for all required fees, charges, and conditions—causes the Military Annual Percentage Rate ("MAPR") to exceed the Military Lending Act's 36% cap for Covered Borrowers.

13. The Military Lending Act ("MLA") prohibits creditors from extending consumer credit to covered borrowers at a MAPR greater than 36%, calculated to include not only interest, but also fees and charges imposed directly or indirectly as a condition of the extension of credit. See 10 U.S.C. § 987, et seq.



TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

14. Critically, the MAPR includes application fees, participation fees, fees for ancillary products required to obtain credit, and fees imposed in connection with a transaction for consumer credit.

15. Accordingly, Defendants' reliance on a nominal "0% APR" for certain loan products is legally irrelevant where the true economic cost of the credit exceeds the MLA's statutory ceiling.

16. Upon information and belief, Defendants require consumers to agree to standardized contractual provisions in connection with obtaining RALs, including arbitration provisions and waivers of legal rights.

17. The MLA expressly prohibits creditors from requiring Covered Borrowers to submit to arbitration or waive their rights to seek relief in court as a condition of consumer credit. 10 U.S.C. § 987(e).

18. Plaintiff, a member of the United States Navy, used Defendants' tax preparation services and, at relevant times, obtained a Refund Anticipation Loan through Jackson Hewitt.

19. Through the inclusion of unlawful contractual provisions and the imposition of fees and charges incident to the extension of credit, Defendants extended consumer credit to Plaintiff in violation of the MLA.

20. As tax refund-based lending products have grown in popularity, they increasingly resemble payday lending, characterized by short repayment periods, automatic repayment mechanisms, and high effective borrowing costs.

21. In violation of the MLA, Defendants' RAL products impose a MAPR that exceeds the statute's legal limit when properly calculated.

22. Defendants' loan products violate the MLA in multiple respects, including but not limited to: (1) imposing a MAPR in excess of 36%; (2) failing to provide required disclosures; (3) including class action waivers and jury trial waivers; (4) including mandatory arbitration provisions; (5) imposing unreasonable notice requirements; and (6) requiring access to a deposit



TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

account or tax refund stream as security for repayment. See 10 U.S.C. §§ 987(b), (c), and (e)(1), (2), (4), (5), (6). Among the abusive lending practices that the MLA was designed to curb was predatory loans made to service members.[1]

23. In a Department of Defense ("DoD") report on lending practices affecting military members (the "Report"), the egregious lending practices prevalent in the lending industry were highlighted.[2]

24. The Report noted that lenders were "heavily concentrated around military bases," with statistics showing that communities with military installations "rank among the most heavily targeted communities in their respective states."[3]

25. Military populations were targeted for an obvious reason: "active-duty military personnel are three times more likely than civilians to have taken out a payday loan," with such loans "costing service members over $80 million in abusive fees annually as of 2005."[4]

26. Defendants' business practices violate the MLA and are part of a systematic nationwide policy and practice.

27. Plaintiff seeks to hold Defendants accountable for their actions and prevent their predatory lending practices from continuing.

## THE PARTIES

28. Plaintiff, a member of the United States Navy, is an individual over 18 years of age. At all relevant times, Plaintiff was a natural person resident of Everett, Washington. During the class period, Plaintiff was a Covered Member as that term is defined by the MLA.

---

[1] Report on Predatory Lending Practices Directed at Members of the Armed Forces and Their Dependents, U.S. DEP'T OF DEFENSE (Aug. 9, 2006), available at https://apps.dtic.mil/sti/pdfs/ADA521462.pdf.

[2] *Id.* at 10–16.

[3] *Id.* at 10–11.

[4] *Id.* at 11.



TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

29. Defendant Jackson Hewitt, Inc. is a Virginia corporation with its headquarters at 501 N Cattlemen Rd Ste 300, Sarasota, Florida 34232. This Defendant is registered to do business in this state, and may be served at 300 Deschutes Way, Suite 208 MC-CSC1, Tumwater, Washington 98501.

30. Defendant Republic Bank & Trust Company is the originating lender that underwrites and disburses Refund Advance Loans. Defendant Republic Bank & Trust Company is a Kentucky corporation with a principal place of business at 601 W Market Street, Louisville, Kentucky 40202.

31. Defendant Jackson Hewitt, Inc. has offered loan agreements to consumers, including Covered Members, during the relevant time period.

32. Defendants have acted in concert and are jointly and severally liable for their concerted and collective violations of the MLA.

33. Jackson Hewitt, Inc. occupies the role of a "creditor" within the meaning of the MLA, 32 C.F.R. § 232.3(i), because it: (i) controls the application intake for all RALs, which are available exclusively through its platform; (ii) conditions loan eligibility on the use of its tax preparation services, as stated in the Bank Product Application and Agreement: "[o]btaining the [NFTRA] requires having your income tax returns prepared and filed by a Jackson Hewitt Tax Service Tax Preparer"; (iii) receives compensation from Republic Bank "in consideration of rights granted by JHI to BANK and the performance of services by JHI and its affiliates — on behalf of BANK"; (iv) is granted ongoing access to loan status information throughout the transaction; and (v) is identified in Republic Bank's own communications to Covered Borrowers as the necessary intermediary for completing the loan application process. Jackson Hewitt thus arranges, negotiates, and facilitates consumer credit extended to Covered Borrowers within the meaning of 32 C.F.R. § 232.3(i)(2).



TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

## JURISDICTION AND VENUE

34. This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331, as Plaintiff's claims arise under the Military Lending Act, 10 U.S.C. § 987, a federal statute. This Court additionally has jurisdiction over Defendants because they, at all times relevant herein, regularly conducted business in the State of Washington, including providing tax preparation services in Washington and making loans or servicing loans to service members in Washington. Republic Bank & Trust Company specifically extended consumer credit to Plaintiff at his address in Everett, Washington, knowing Plaintiff was a Washington resident, and directed loan-related communications to Plaintiff in Washington; these contacts with Washington give rise to Plaintiff's claims herein and establish specific personal jurisdiction over Republic Bank.

35. Venue is proper in this District because Defendants coordinated business operations in Washington, did business in Washington and in this District, and committed the wrongful lending practices and statutory violations alleged herein in this District.

## LEGAL BACKGROUND

### The MLA was Designed to Protect Covered Members Just Like Plaintiff and the Class

36. The Department of Defense's Report on lending practices discussed the payday lending industry at length.[5] The Report noted that payday lenders were "heavily concentrated around military bases," with statistics showing that communities with military installations "rank among the most heavily targeted communities in their respective states."[6]

37. Military populations were targeted for an obvious reason: "active-duty military personnel are three times more likely than civilians to have taken out a payday loan," with such loans costing service members millions in abusive fees.[7] Moreover, the military payment

---

[5] Report, *supra* n.1.

[6] *Id.* at 10–11.

[7] Id. at 11.



TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

architecture, and the Uniform Code of Military Justice to which service members are bound, make them particularly vulnerable to predatory payday loans:

> Check-holding, a central feature of payday loans, is particularly risky for military borrowers. Every payday loan involves a prospective "bad" check. Military borrowers are required to maintain bank accounts in order to receive direct deposit of military pay and are subject to the Uniform Code of Military Justice that penalizes deliberately writing a check not covered by funds on deposit. Borrowers become trapped in repeat borrowing or renewals of loans in order to keep the check used to obtain the loan from bouncing, a key reason that payday loans are debt traps.[8]

38. While the precise tax refund advance product offering was developed somewhat recently, its genre of high interest loan is not new. In 2006, the DoD noted military "borrowers encounter[ed] a booming virtual market of small loan offers, payday loans, and 'military loans' via the Internet."[9] Those loans, like Defendants' loans, "are delivered and collected online through electronic fund transfer."[10]

39. The Report noted key similarities between the various predatory lending products that accurately encapsulate Defendants' business model:

(1) Predatory lenders seek out young and financially inexperienced borrowers who have bank accounts and steady jobs, but also have little in savings, flawed credit or have hit their credit limit. These borrowers are less likely to weigh the predatory loan against other opportunities and are less likely to be concerned about the consequences of taking the loan.

(2) Predatory lenders make loans based on access to assets (through checks, bank accounts, car titles, tax refunds, etc.) and guaranteed continued income, but

---

[8] *Id.* at 14. To be sure, Refund Advance Loan providers like Defendants do not collect physical checks from their customers at loan initiation but instead take a virtual check by requiring Covered Members to authorize automatic debits from their tax refunds to repay their loans.

[9] *Id.* at 15.

[10] *Id.* at 16.



TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

not on the ability of the borrower to repay the loan without experiencing further financial problems.[11]

(3) … Increasingly the Internet is used to promote loans to service members.

(4) Predatory products feature high fees/interest rates, with some requiring balloon payments, while others pack excessive charges into the product. The result of their efforts is to obfuscate the comparative cost of their product with other options available to the borrower.

. . .

(6) Predatory lenders attempt to work outside of established usury limits, either by attempting to obtain exemptions from federal and state statutes or by developing schemes designed to circumvent existing laws.[12]

40. The Report further found "high interest loans, whether provided as a payday loan, military installment loan, or as a result of unscrupulous automobile financing can leave a service member with enormous debt, family problems, difficulty maintaining personal readiness and a tarnished career."[13] As if being trapped in a debt cycle is not bad enough, some service member victims of payday and other lenders experienced disciplinary action (ranging from reprimands to "loss of promotions and separation from the military") as a result of their financial hardship.[14]

41. Drawing from the bountiful evidence of service member abuse at the hands of predatory lenders, the DoD concluded it could not "prevent predatory lending without assistance from Congress, the state legislatures, and federal and state enforcement agencies."[15]

---

[11] To that end, lenders' "use of checks, access to bank accounts, [and similar other methods of extracting repayment] pressure the borrower to consider loan payments as being their top priority." *Id.* at 44.

[12] *Id.* at 21–22

[13] *Id.* at 39.

[14] *Id.* at 41–42.

[15] *Id.* at 46.



TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

42. To curb usurious interest rates, excessive annual percentage rates ("APRs"), and bogus fees, the DoD requested legislation that would prevent lenders from preying on service members and endangering the nation's military readiness.[16]

43. The American Bar Association and others expressed support for the DoD's request, noting the urgent need for remedial Congressional action to curb predatory loan practices harming service members. The legislation requested was supported by the DoD, military and veterans' organizations, legal aid organizations, consumer advocacy groups, faith-based organizations, and of course lawmakers.

44. Congress answered the call and passed the MLA to protect Covered Members from unfair, deceptive, and excessively priced loans.

**The Military Lending Act**

45. In the wake of the DoD's investigations, in 2006, the Military Lending Act, 10 U.S.C. § 987 *et seq*. was enacted.

46. The MLA makes it unlawful for a creditor to "impose an annual percentage rate of interest greater than 36 percent with respect to the consumer credit extended to a Covered Member or a dependent of a Covered Member." 10 U.S.C. § 987(b).

47. The MLA also requires mandatory disclosures in "consumer credit"[17] transactions with Covered Members, which include:

---

[16] Specifically, the DoD requested legislation protecting service members "from unfair, deceptive lending practices and usurious interest rates and to require uniform disclosure of credit and terms. Specifically, lenders should not be permitted to base loans on prospective bad checks, electronic access to bank accounts, mandatory military allotments, or titles to vehicles. All costs involved in borrowing should be included in interest rate calculations and disclosures. Laws and regulations must be changed to close regulatory loopholes that leave non-resident military borrowers unprotected in many states." *Id.*

[17] Under the MLA, consumer credit is defined as "credit offered or extended to a Covered Member primarily for personal, family, or household purposes," subject to a finance charge or payable by written agreement in more than four installments and outside the ambit of any of the identified exceptions.



TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

- A statement of the annual percentage rate of interest applicable to the extension of credit, 10 U.S.C. § 987(c)(1)(A);
- Any disclosures required under the Truth in Lending Act, 10 U.S.C. § 987(c)(1)(B); and
- A clear description of the payment obligations of the member or dependent, as applicable, 10 U.S.C. § 987(c)(1)(C).

48. Additionally, the MLA prohibits creditors from including provisions in a consumer-credit transaction that require the Covered Borrower to submit to arbitration or to waive the borrower's right to legal recourse. 10 U.S.C. § 987(e).

49. The MLA also makes it unlawful to use a check or other method of access to a deposit, savings, or other financial account maintained by the borrower as security for the obligation. 10 U.S.C. § 987(e).

## FACTUAL BACKGROUND

### Tax Refund Advance Loans

50. Defendants market and facilitate short-term, refund-based consumer loans known as Jackson Hewitt Refund Anticipation Loans ("RALs"), including Early Tax Refund Advance ("ETRA") and No Fee Tax Refund Advance ("NFTRA") products, which allow taxpayers to receive a portion of their anticipated federal tax refund shortly after filing.

51. These RALs are originated by partner financial institutions such as Republic Bank & Trust Company but are marketed, offered, and integrated into the tax preparation and filing services provided by Defendant.

52. As a condition of receiving a RAL, borrowers must agree to Defendants' required tax preparation, refund processing, and loan repayment structure, including authorization for Defendants and their banking partners to receive and control the borrower's federal tax refund.

53. If approved, loan proceeds are disbursed to the borrower shortly after filing, often within one day, based on the borrower's anticipated federal tax refund.



TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

54. Many consumers who obtain RALs, including Plaintiff and similarly situated class members, are Covered Borrowers within the meaning of the Military Lending Act, 10 U.S.C. § 987, including active-duty service members and their dependents.

55. RALs are repaid through direct routing and interception of the borrower's federal tax refund, which is used to automatically satisfy the loan obligation upon receipt from the Internal Revenue Service.

56. As part of this process, borrowers authorize Defendants and their partners to deduct the loan amount and associated fees from the refund before any remaining balance is disbursed to the borrower.

57. Borrowers further authorize Defendants and/or their banking partners to transfer the amount due on the loan directly from the refund proceeds, leaving only any remaining funds to be paid to the borrower.

58. This repayment mechanism constitutes an unlawful method of using access to a deposit account or tax refund stream as security for the obligation, in violation of the Military Lending Act's protections for Covered Borrowers.

59. This refund-routing and repayment structure is not optional or incidental; it is a mandatory condition of obtaining the loan.

60. Although Defendants may label certain RAL products, including NFTRA loans, as carrying "0% interest," the Military Lending Act requires calculation of the Military Annual Percentage Rate ("MAPR"), which includes not only stated interest but also fees and charges imposed directly or indirectly as a condition of the extension of credit. 10 U.S.C. § 987(i).

61. The utilization of statutorily-defined MAPR instead of simple interest ensures that companies, like Defendants, cannot simply recategorize interest as a "fee" or other charge.

62. RALs are inseparable from a mandatory tax preparation and refund-processing structure that enables Defendants and their partners to impose fees incident to the extension of credit.



TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

63. These fees and charges are incurred as a practical condition of receiving the RAL and therefore must be included in the MAPR calculation under the MLA.

64. For ETRA loans, Defendants impose finance charges and disclose an annual percentage rate of approximately 35.96% based on a short loan duration, while for NFTRA loans, Defendants characterize the loans as "0% APR" despite the presence of associated costs (which must be included in the calculation of MAPR) tied to the transaction.

65. In connection with the RAL program, Defendants deduct from the borrower's tax refund not only the amount of the loan, but also fees related to tax preparation, processing, and other associated services.

66. Specifically, borrowers authorize Defendants and/or their partners to deduct from the refund proceeds:

a. Tax preparation and filing fees;

b. Charges related to processing and transmitting the return;

c. The full amount of any Refund Anticipation Loan; and

d. Fees for additional products or services purchased in connection with the transaction.

67. These fees are imposed in connection with the RAL transaction and reduce the borrower's refund proceeds, functioning as finance charges incident to the extension of consumer credit.

68. Because RALs are short-term advances repaid automatically through refund interception, even modest mandatory fees result in an effective MAPR that can exceed the MLA's 36% statutory cap when properly calculated.

69. When these fees are annualized over the short duration of the loan—often lasting only days or weeks—the effective MAPR far exceeds the MLA's statutory cap, particularly for smaller loan amounts.



TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

70. Borrowers cannot obtain a RAL unless they agree to Defendants' required refund-processing and repayment structure.

71. This required structure is a condition of receiving loan proceeds, and any fees or charges imposed in connection with that structure must be included in the MAPR calculation under the MLA.

72. Defendants cannot evade the MLA's protections by labeling these loans "0% APR" while imposing mandatory fees and repayment mechanisms that effectively extract finance charges from Covered Borrowers.

73. As a result, Defendants extend consumer credit to Covered Borrowers at an unlawful MAPR in violation of 10 U.S.C. § 987(b).

74. In connection with applying for and receiving RALs, consumers are required to sign agreements containing standardized provisions, including arbitration clauses and waivers of legal rights.

75. These agreements purport to require binding individual arbitration and waive the borrower's right to participate in class or representative actions.

76. The Military Lending Act expressly prohibits creditors from requiring Covered Borrowers to submit to arbitration or waive their rights to seek relief in court as a condition of consumer credit. 10 U.S.C. § 987(e)(3).

77. The MLA further prohibits creditors from imposing unreasonable notice requirements as a condition for bringing legal action. 10 U.S.C. § 987(e)(4).

78. Defendants' inclusion and enforcement of arbitration provisions and related waivers in connection with RALs issued to Covered Borrowers violates the MLA and renders such provisions void and unenforceable.

79. Defendants' practices described herein are standardized and uniformly applied to all consumers who apply for and receive RALs.



TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

80. Defendants knew or should have known that the fees and required structures associated with their RAL products would cause the MAPR to exceed the MLA's statutory cap.

81. Defendants further knew or should have known that requiring Covered Borrowers to agree to arbitration and other prohibited provisions violated the express protections afforded to service members under federal law.

## PLAINTIFF SPECIFIC ALLEGATIONS

82. Plaintiff Paul Allen Perez is an Active-Duty Member of the United States Navy and is a Covered Borrower within the meaning of the Military Lending Act, 10 U.S.C. § 987, at all times relevant to this action.

83. Upon information and belief, Defendants did not verify Plaintiff's covered borrower status using the DoD Military Lending Act database or an equivalent system at or prior to consummation of the loan on December 16, 2024, as evidenced by the absence of any database confirmation in the Loan Agreement documents. Moreover, the Bank Product Application and Agreement executed by Plaintiff contains an MLA disclosure in Section 15.C acknowledging the 36% MAPR limitation—yet that same agreement (frankly, in the very next section), Section 16 imposes mandatory arbitration, a jury trial waiver, and a class action waiver with no exclusion for MLA claims.

84. Defendants knew of the MLA's requirements and violated those requirements, defeating any claim of good-faith reliance on the MLA safe harbor.

85. In or around the 2024 tax filing season, Plaintiff used the Jackson Hewitt platform to prepare and electronically file his federal income tax return.

86. In connection with filing his tax return through Jackson Hewitt, Plaintiff was offered the option to obtain a Jackson Hewitt Refund Anticipation Loan ("RAL"), including an



TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

Early Tax Refund Advance ("ETRA") and/or No Fee Tax Refund Advance ("NFTRA") product, marketed as a short-term advance on his anticipated federal tax refund.

87. Plaintiff applied for and received a $1,500.00 Early Tax Refund Advance ("ETRA") loan, originated by Republic Bank & Trust Company ("Republic Bank") and facilitated through the Jackson Hewitt platform. Plaintiff was also presented with and applied for a No Fee Tax Refund Advance ("NFTRA") loan through the same platform on the same date.

88. As part of the standardized RAL program, Plaintiff was required to agree to standardized terms, including Defendants' refund-processing and loan repayment structure as a condition of obtaining the loan.

89. On or about December 16, 2024, Plaintiff executed the Republic Bank & Trust Company Bank Product Application and Agreement (the "Loan Agreement"). The Loan Agreement's Truth-in-Lending Act disclosure states: APR: 35.96%; Finance Charge: $110.85; Amount Financed: $1,500.00; Total of Payments: $1,610.85; one payment due upon receipt of Plaintiff's 2024 federal tax refund. The creditor identified in that disclosure is Republic Bank & Trust Co., 601 W. Market St., Louisville, KY 40202.

90. The loan disclosures and agreement provided that the lender would not process Plaintiff's loan application unless he agreed to the required terms governing disbursement and repayment of the loan, including authorization for Defendants and their partners to access his tax refund. In addition, Plaintiff was required to electronically sign agreements containing arbitration provisions and waivers of legal rights in connection with obtaining the loan.

91. Upon approval, Plaintiff received the loan proceeds shortly after filing his return, based on his anticipated federal tax refund.

92. Plaintiff's RAL was structured to be repaid automatically through interception of his federal tax refund.

93. Plaintiff was required to authorize Defendants and/or their banking partners to receive his federal tax refund and to apply those funds toward repayment of the loan.



TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

94. Plaintiff further authorized Defendants and/or their partners to deduct from his tax refund not only the amount of the loan, but also fees and charges associated with tax preparation, processing, and related services before any remaining funds were disbursed to him.

95. Specifically, Plaintiff authorized Defendants and/or their partners to deduct from his refund proceeds: (i) tax preparation and filing fees; (ii) processing and transmission fees; (iii) the full amount of the RAL; and (iv) fees for additional products or services purchased in connection with the transaction.

96. These fees and deductions were imposed in connection with the RAL program and reduced the amount of Plaintiff's federal tax refund ultimately received, functioning as finance charges incident to the extension of consumer credit.

97. As set forth in the Bank Product Fee Disclosure executed by Plaintiff on December 16, 2024, Plaintiff authorized the following deductions from his 2024 federal tax refund of approximately $5,857.00: (i) ETRA loan repayment to Republic Bank of $1,500.00; (ii) ETRA Finance Charge to Republic Bank of $110.85; (iii) Jackson Hewitt tax preparation and related fees of $360.00; and (iv) Assisted Refund Fee of $54.95 — for total authorized deductions of $2,025.80.

98. The Finance Charge ($110.85), Assisted Refund Fee ($54.95), and Jackson Hewitt tax preparation fee ($360.00) are charges imposed directly or indirectly as a condition of the extension of credit within the meaning of 10 U.S.C. § 987(i) and 32 C.F.R. § 232.4(c), because Plaintiff could not obtain the ETRA loan without (a) paying Jackson Hewitt's tax preparation fee and (b) establishing the Assisted Refund processing account as required by the Loan Agreement. When all mandatory fees are included in the MAPR calculation as required by the MLA, the effective MAPR for Plaintiff's ETRA loan equals approximately 170.6%, calculated as ($525.80 / $1,500.00) x (365 / 75) — based on total mandatory charges of $525.80 on a $1,500.00 loan with a 75-day term. This far exceeds the MLA's 36% statutory cap. Even excluding the tax preparation fee entirely, the MAPR based solely on the Finance Charge and


TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

Assisted Refund fee equals approximately 53.8% — still nearly fifty percent above the statutory ceiling.

99. In addition, Plaintiff was required, as a condition of obtaining the RAL and related services, to agree to contractual provisions including arbitration clauses and waivers of legal rights.

100. The loan agreement governing Plaintiff's RAL included provisions requiring disputes to be resolved through binding arbitration and purporting to waive the right to participate in class or representative actions.

101. The inclusion of mandatory arbitration provisions and waivers in connection with Plaintiff's loan violated the Military Lending Act's prohibition on requiring Covered Borrowers to submit to arbitration or waive their right to seek relief in court.

102. The Military Lending Act expressly prohibits creditors from requiring Covered Borrowers to submit to arbitration or waive their rights to legal recourse as a condition of consumer credit. 10 U.S.C. § 987(e).

103. Defendants' RAL program further required Plaintiff to authorize repayment through direct access to and control over his federal tax refund, constituting an unlawful method of using access to a deposit account or asset stream as security for the obligation.

104. Defendants' standardized lending structure—requiring Covered Borrowers like Plaintiff to route refunds through mechanisms controlled by Defendants and their partners, authorize automatic repayment, and agree to unlawful contractual provisions—violates the Military Lending Act.

105. As a result of Defendants' conduct, Plaintiff was subjected to unlawful lending practices, including excessive MAPR, improper repayment mechanisms, and prohibited contractual provisions.

106. Plaintiff brings this action on behalf of himself and all similarly situated Covered Borrowers to obtain relief for Defendants' violations of the Military Lending Act.



TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

## TOLLING OF THE STATUTE OF LIMITATIONS

107. The Servicemember Civil Relief Act ("SCRA"), 50 U.S.C. § 3901, *et seq.*, tolls any and all limitations or repose periods for all active-duty military members until their active-duty service concludes.

108. Specifically, § 3936(a) of the SCRA provides:

> The period of a servicemember's military service may not be included in computing any period limited by law, regulation, or order for the bringing of any action or proceeding in a court, or in any board, bureau, commission, department, or other agency of a State (or political subdivision of a State) or the United States by or against the servicemember or the servicemember's heirs, executors, administrators, or assigns.

## CLASS ACTION ALLEGATIONS

109. Plaintiff brings this action on behalf of himself and all other persons similarly situated. The proposed "MLA Federal Refund Access Class," the "MLA Excessive MAPR Class" and the "MLA Waiver of Rights Class" (collectively, the "Classes") are defined as follows:

> **MLA Federal Refund Access Class:** All Covered Borrowers who, within the applicable limitations period, obtained one or more Jackson Hewitt Refund Anticipation Loans ("RALs") and were required to authorize routing of their federal tax refund through a temporary deposit account, for repayment of the loan and deduction of fees.
>
> **MLA Excessive MAPR Class:** All Covered Borrowers who, within the applicable limitations period, obtained one or more Jackson Hewitt Refund Anticipation Loans ("RALs") where mandatory fees or charges imposed directly or indirectly as a condition of the credit transaction resulted in a Military Annual Percentage Rate ("MAPR") exceeding 36%.
>
> **MLA Waiver of Rights Class:** All Covered Borrowers who, within the applicable limitations period, obtained one or more Jackson Hewitt Refund Anticipation Loans ("RALs") as a condition of receiving that consumer credit, to agree to mandatory arbitration provisions, jury trial waivers, class action waivers, or other unlawful terms.

Expressly excluded from the Classes are: (a) any Judge presiding over this action and members of their families; (b) Defendants and any entity in which any Defendant has a controlling interest, or which has a controlling interest in any of Defendants, and their legal representatives, assigns and successors; and (c) all persons who properly execute and file a timely request for exclusion from the Classes.



TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

110. Plaintiff reserves the right to amend the Class definitions if further investigation and discovery indicates that the Class definitions should be narrowed, expanded, or otherwise modified.

**Numerosity and Ascertainability**

111. Plaintiff is unable to state the precise number of members of the Classes because such information is in the exclusive control of Defendants.

112. However, upon information and belief and the investigation of counsel, Plaintiff believes the proposed Classes each contain members so numerous that separate joinder of each member of the respective Class is impractical. There are tens or hundreds of thousands of Class Members for the MLA Federal Refund Access Class, MLA Excessive MAPR Class and the MLA Waiver of Rights Class, respectively.

113. Defendants' scheme has harmed and continues to harm the members of the Classes.

114. The identities of all Class members are readily ascertainable from the business records of Defendants.

115. The disposition of the claims of these Class Members in a single action will provide substantial benefits to all parties and to the Court.

**Commonality**

116. There are common questions of law and fact affecting the rights of each Class Member and common relief by way of damages. The harm that Defendants have caused is substantially uniform with respect to Class Members. Common questions of law and fact that affect the Class Members include, but are not limited to:

a. Whether Plaintiff, MLA Federal Refund Access Class, MLA Excessive MAPR Class and the MLA Waiver of Rights Class are Covered Members subject to the protections of the MLA;



TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

b. Whether Defendants are "creditors" subject to the requirements and limitations of the MLA;

c. Whether Defendants' loan products constitute an extension of "consumer credit" subject to the protections and limitations of the MLA;

d. Whether Defendants entered into standard form loan agreements with Covered Members;

e. Whether Defendants' loans required access to protected accounts;

f. Whether Defendants' loans exceed the MLA's statutory rate cap of 36% MAPR;

g. Whether Defendants failed to provide required credit disclosures in violation of the MLA;

h. Whether Defendants' standard form loan agreements contain a class action waiver provision, jury trial waiver provision, or onerous legal provisions in violation of the MLA;

i. Whether Defendants' standard form loan agreements contain an arbitration clause in violation of the MLA;

j. Whether Plaintiff, the MLA Federal Refund Access Class, MLA Excessive MAPR Class and the MLA Waiver of Rights Class are entitled to actual or statutory damages for the aforementioned violations and, if so, in what amounts;

k. Whether Defendants should be enjoined from continuing their lending practices in the manner challenged herein;

l. Whether Defendants are subject to punitive damages, and, if so, the proper measure of such damages and remedies to which Plaintiff, the MLA Federal Refund Access Class, MLA Excessive MAPR Class and the MLA Waiver of Rights Class are entitled under 10 U.S.C. § 987(f)(5); and



TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

m. Whether Plaintiff, the MLA Federal Refund Access Class, MLA Excessive MAPR Class and the MLA Waiver of Rights Class are entitled to any other relief.

**Typicality**

117. The claims and defenses of Plaintiff are typical of the claims and defenses of the MLA Federal Refund Access Class, MLA Excessive MAPR Class and the MLA Waiver of Rights Class Members because Plaintiff is a Covered Member and loan agreements with Defendants are typical of the type of personal, household, or family loans that Defendants normally and routinely provide to Covered Members.

118. Additionally, Defendants use the same or substantially similar standard form loan agreements in all of their lending transactions. While versions may change from year to year, Defendants use substantially similar form documents with all borrowers. The documents involved in relevant transactions were standard form documents and the violations are statutory in nature.

119. Plaintiff suffered damages of the same type and in the same manner as the MLA Federal Refund Access Class, MLA Excessive MAPR Class and the MLA Waiver of Rights Class.

120. There is nothing peculiar about Plaintiff's claims. Plaintiff has no interests antagonistic to the interests of the other members of the MLA Federal Refund Access Class, MLA Excessive MAPR Class and the MLA Waiver of Rights Class.

**Adequate Representation**

121. Plaintiff is an adequate class representative because his interests do not conflict with the interests of the MLA Federal Refund Access Class, MLA Excessive MAPR Class and the MLA Waiver of Rights Class and he will adequately and fairly protect the interests of the MLA Federal Refund Access Class, MLA Excessive MAPR Class and the MLA Waiver of Rights Class Members.



TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

122. Plaintiff intends to prosecute this action vigorously and has taken actions before filing this Complaint by hiring skilled and experienced counsel. There is no conflict between Plaintiff and the MLA Federal Refund Access Class, MLA Excessive MAPR Class and the MLA Waiver of Rights Class Members.

123. Plaintiff's counsel are adequate counsel, are experienced in class action litigation in state and federal courts across the United States and have particular skill in litigating statutory claims under state and federal law. Additionally, attorney Domenica Russo, who will seek admission *pro hac vice*, is a veteran, having served the United States as a member of the Army and Army Reserves.

124. Plaintiff and his counsel are committed to vigorously prosecuting the action on behalf of the MLA Federal Refund Access Class, MLA Excessive MAPR Class and the MLA Waiver of Rights Class and have the financial resources to do so. Neither Plaintiff nor his counsel have interests adverse to those of the Classes.

**<u>Predominance and Superiority</u>**

125. The common questions of law and fact set forth herein predominate over any questions affecting only individual Class Members. A class action provides a fair and efficient method for the adjudication of this controversy for the following reasons and is superior to the alternative methods involved in individual litigation:

- The MLA Federal Refund Access Class, MLA Excessive MAPR Class and the MLA Waiver of Rights Class Members are so numerous as to make joinder impracticable. However, the MLA Federal Refund Access Class, MLA Excessive MAPR Class and the MLA Waiver of Rights Class Members are not so numerous as to create manageability problems. There are no unusual legal or factual issues that would create manageability problems. Prosecution of separate actions by individual members of the MLA Federal Refund Access Class, MLA Excessive MAPR Class and the MLA Waiver of Rights Class



TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

would create a risk of inconsistent and varying adjudications against Defendants when confronted with incompatible standards of conduct;

- Adjudications with respect to individual members of the MLA Federal Refund Access Class, MLA Excessive MAPR Class and the MLA Waiver of Rights Class Members could, as a practical matter, be dispositive of any interest of other members not parties to such adjudications, or substantially impair their ability to protect their interests; and
- The claims of the individual MLA Federal Refund Access Class, MLA Excessive MAPR Class and the MLA Waiver of Rights Class Members are small in relation to the expenses of individual litigation, making a class action the only procedural method of redress in which MLA Federal Refund Access Class, MLA Excessive MAPR Class and the MLA Waiver of Rights Class Members can, as a practical matter, recover for the harms caused by Defendants.

126. Given the above, the proposed MLA Federal Refund Access Class, MLA Excessive MAPR Class and the MLA Waiver of Rights Class both fulfill the certification criteria of Federal Rule of Civil Procedure 23(a), (b)(2), and (b)(3).

## FIRST CAUSE OF ACTION
## UNLAWFUL SECURITY INTEREST / ACCOUNT ACCESS

**Violations of the Military Lending Act 10 U.S.C. § 987, *et seq.***
**Unlawful Account Access and Refund Interception**
***(On Behalf of Plaintiff and the MLA Federal Refund Access Class)***

127. Plaintiff realleges and incorporates by reference herein the allegations set forth in the above paragraphs.

128. The Military Lending Act prohibits creditors from extending consumer credit to Covered Borrowers on terms that require unlawful repayment mechanisms or access to a



TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

borrower's deposit account as a condition of the extension of credit. 10 U.S.C. § 987(e)(5); 32 C.F.R. § 232.8.

129. In particular, the MLA makes it unlawful for a creditor to require a Covered Borrower to establish an allotment or to repay a consumer credit obligation through preauthorized access to a deposit account, except in narrowly defined circumstances. 10 U.S.C. § 987(e)(5).

130. A "Covered Member" in the statute is a "member of the armed forces who is on active duty under a call or order that does not specify a period of 30 days or less."

131. Plaintiff and members of the MLA Federal Refund Access Class are "Covered Borrowers" entitled to the MLA's heightened protections.

132. Defendants are "creditors" within the meaning of the MLA because they regularly extend, arrange, facilitate, service, and profit from consumer credit extended to Covered Borrowers through the Jackson Hewitt Refund Anticipation Loans ("RALs"), including ETRA and NFTRA products. 10 U.S.C. § 987(i)(5).

133. Defendants' Refund Advance lending model is structured around Defendants' access to and control over the borrower's federal tax refund stream.

134. As a condition of obtaining a Refund Advance Loan, borrowers are required to authorize Defendants and their designated financial intermediaries to route, intercept, and apply the borrower's federal tax refund proceeds toward repayment of the loan.

135. Defendants' Refund Advance Loan program requires borrowers to authorize Republic Bank to establish a temporary deposit account for receipt of federal tax refund proceeds.

136. The Refund Advance Loan Agreement requires borrowers to instruct and authorize the lender and a designated "Processing Bank" to deduct amounts owed on the loan directly from the borrower's federal tax refund.

137. Pursuant to Section 9 of the Bank Product Application and Agreement, Republic Bank opened a temporary deposit account on Plaintiff's behalf and in Plaintiff's name for the limited purpose of processing the direct deposit of Plaintiff's refund. This temporary account



TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

constitutes a "deposit, savings, or other financial account maintained by the borrower" within the meaning of 10 U.S.C. § 987(e)(5).

138. Pursuant to Section 8 of the same Bank Product Application and Agreement, Plaintiff "grant[ed] to BANK a security interest, and release[d] any rights, in the anticipated tax refund to be paid to [Plaintiff] by the IRS and state taxing authority for the 2024 tax year." This constitutes an unlawful security interest in a financial asset of the Covered Borrower, in direct violation of 10 U.S.C. § 987(e)(5) and 32 C.F.R. § 232.8.

139. This repayment mechanism functions as an unlawful method of securing the obligation through direct access to the borrower's refund proceeds and deposit-account infrastructure, depriving Covered Borrowers of control over their federally protected refund funds.

140. Defendants' required refund-routing and Processing Bank deduction structure constitutes an impermissible repayment condition prohibited by the MLA and its implementing regulations. 10 U.S.C. § 987(e)(5); 32 C.F.R. § 232.8.

141. Defendants' conduct is standardized and uniformly applied to all borrowers who obtain Refund Advance Loans, including Covered Borrowers.

142. As a direct and proximate result of Defendants' unlawful practices, Plaintiff and members of the MLA Federal Refund Access Class have suffered injury, including the loss of control over their federal tax refunds and the imposition of unlawful loan repayment conditions.

143. Accordingly, pursuant to 10 U.S.C. § 987(f)(5), on behalf of himself and the MLA Federal Refund Access Class, Plaintiff seeks an order awarding statutory damages, actual and punitive damages, declaratory relief, and such other relief as the Court deems just and proper.

144. Further, Plaintiff is entitled to an award of attorneys' fees and costs pursuant to 10 U.S.C. § 987(f)(5)(B).



TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

## SECOND CAUSE OF ACTION
## <u>EXCESSIVE INTEREST AND FEES</u>

**Violations of the Military Lending Act 10 U.S.C. § 987, *et seq*.**
**Excessive MAPR**
***(On Behalf of Plaintiff and the MLA Excessive MAPR Class)***

145. Plaintiff realleges and incorporates by reference herein the allegations set forth in the above paragraphs.

146. A "Covered Member" in the statute is a "member of the armed forces who is on active duty under a call or order that does not specify a period of 30 days or less."

147. Plaintiff and the MLA Excessive MAPR Class are "Covered Members" and are therefore afforded the protections granted by the MLA.

148. A Covered Member is a consumer who, at the time the consumer becomes obligated on a consumer credit transaction or establishes an account for consumer credit, is a Covered Member of the armed forces or a dependent of a Covered Member (as defined in 32 CFR 232.3(g)(2) and (g)(3)).

149. Plaintiff is an active-duty member of the United States Navy and is therefore a Covered Member under the MLA.

150. Defendants are "creditors" subject to the requirements and limitations imposed by the MLA in that Defendants engage in the business of extending consumer credit to Covered Members protected by the MLA. 10 U.S.C. § 987(i)(5); 32 C.F.R. § 232.3(i).

151. The Military Lending Act makes it unlawful for a creditor to extend consumer credit to a Covered Borrower with a MAPR greater than 36%. 10 U.S.C. § 987(b).

152. Defendants' standard form loan agreements include mandatory arbitration agreements in violation of 10 U.S.C. § 987(e)(3).

153. Defendants offered and facilitated Jackson Hewitt Refund Anticipation Loans ("RALs"), including ETRA and NFTRA products to Covered Borrowers, including Plaintiff, originated by Republic Bank through the Jackson Hewitt platform.



TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

154. Defendants imposed fees including: Finance Charge ($110.85), Assisted Refund Fee ($54.95), and Jackson Hewitt tax preparation fee ($360.00) as set forth above.

155. These fees and charges are imposed incident to, and as a condition of, the extension of consumer credit and therefore must be included in the MAPR calculation under the MLA.

156. When properly calculated, the MAPR for Defendants' Refund Advance Loans exceeds the MLA's 36% statutory cap.

157. As a result, Defendants have and continue to violate the Military Lending Act, 10 U.S.C. § 987.

158. Accordingly, pursuant to 10 U.S.C. § 987(f)(5), on behalf of himself and the MLA Excessive MAPR Class, Plaintiff seeks an order from the Court awarding statutory damages in the amount of $500 per violation, actual and punitive damages, along with any other applicable relief pursuant to 10 U.S.C. § 987(f)(5).

159. Further, Plaintiff is entitled to an award of attorneys' fees and costs pursuant to 10 U.S.C. § 987(f)(5)(B).

## THIRD CAUSE OF ACTION
## WAIVER OF RIGHTS

**Violations of the Military Lending Act 10 U.S.C. § 987, et seq.**
**Unlawful Arbitration and Waiver**
***(On Behalf of Plaintiff and the MLA Waiver of Rights Class Members)***

160. Plaintiff realleges and incorporates by reference herein the allegations set forth in the above paragraphs.

161. A "Covered Member" in the statute is a "member of the armed forces who is on active duty under a call or order that does not specify a period of 30 days or less."

162. Plaintiff and the MLA Waiver of Rights Class Members are "Covered Members" and are therefore afforded the protections granted by the MLA.



TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

163. A Covered Member is a consumer who, at the time the consumer becomes obligated on a consumer credit transaction or establishes an account for consumer credit, is a Covered Member of the armed forces or a dependent of a Covered Member (as defined in 32 CFR 232.3(g)(2) and (g)(3)).

164. Plaintiff is an active-duty member of the United States Navy and is therefore a Covered Member under the MLA.

165. Defendants are "creditors" subject to the requirements and limitations imposed by the MLA in that Defendants engage in the business of extending consumer credit to Covered Members protected by the MLA. 10 U.S.C. § 987(i)(5); 32 C.F.R. § 232.3(i).

166. The MLA prohibits creditors from attempting to secure the waiver of various rights. 10 U.S.C. § 987(e).

167. Defendants' standard form loan agreements include mandatory arbitration agreements in violation of 10 U.S.C. § 987(e)(3).

168. Defendants' standard form loan agreements include class action waivers and jury trial waivers in violation of 10 U.S.C. § 987(e)(3).

169. Plaintiff's Bank Product Application and Agreement, Section 16, imposes mandatory binding arbitration covering "all federal or state law claims—in any way arising from or in any way relating directly or indirectly to this Agreement," with no exception for claims under the Military Lending Act. Section 16 further requires waiver of the right to a jury trial and expressly prohibits participation in any class action or representative proceeding. Defendants' standard form loan agreements further impose an unreasonable notice requirement as a condition for bringing legal action, in violation of 10 U.S.C. § 987(e)(3), (4). Notably, that very same agreement contains an MLA disclosure in Section 15.C acknowledging the statutory protections afforded to Covered Members — including the 36% MAPR cap—demonstrating that Defendants were fully aware of the MLA's requirements and deliberately included prohibited arbitration and waiver provisions in the same instrument.



TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

170. The inclusion of a cursory carve-out in Section 16.H of the Bank Product Application and Agreement—stating that "this Section 16 does not apply (i) to 'covered borrowers' as defined by the Military Lending Act"— does not cure Defendants' violation of 10 U.S.C. § 987(e)(3).

171. First, the MLA prohibits a creditor from extending consumer credit to a covered borrower "on terms that" require arbitration or waive legal rights; the statutory violation is consummated at origination, not at the point of enforcement, and a buried contractual carve-out does not unwind the act of extending credit on prohibited terms.

172. Second, Section 16.H merely restates the protection that 10 U.S.C. § 987(f)(2) already provides as a matter of federal law; any provision in violation of the MLA is void from inception. Defendants cannot claim compliance by reproducing the statute's own remedy in fine print.

173. Third, the carve-out was never operationalized: Defendants did not verify Plaintiff's covered-borrower status using the DoD Military Lending Act database or any equivalent system prior to consummation of the loan on December 16, 2024, and nowhere in the agreement, the accompanying disclosures, or the signature block were Plaintiff or any class member informed that Section 16 did not apply to them.

174. To the contrary, the agreement's signature block expressly directed Plaintiff to acknowledge the "arbitration/no class action provisions in Section 16 which may substantially limit your rights," with no corresponding disclosure that those provisions were inapplicable to him. A covered-borrower carve-out that is never identified to the borrower, never triggered by any verification process, and contradicted by the operative signing language is illusory, not protective.

175. Fourth, and critically, the existence of Section 16.H affirmatively demonstrates that Defendants knew the MLA's prohibitions applied to covered borrowers and deliberately



TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

chose to include the arbitration and waiver provisions regardless, thereby satisfying the willfulness element relevant to punitive damages under 10 U.S.C. § 987(f)(5)(A)(ii).

176. As a result, Defendants have and continue to violate the Military Lending Act, 10 U.S.C. § 987.

177. Accordingly, pursuant to 10 U.S.C. § 987(f)(5), on behalf of himself and the MLA Waiver of Rights Class, Plaintiff seeks an order from the Court awarding statutory damages in the amount of $500 per violation, actual and punitive damages, along with any other applicable relief pursuant to 10 U.S.C. § 987(f)(5).

178. Further, Plaintiff is entitled to an award of attorneys' fees and costs pursuant to 10 U.S.C. § 987(f)(5)(B).

## DEMAND FOR JURY TRIAL

Plaintiff, on behalf of himself and the Classes, demands a jury trial on all issues and Counts so triable.

## PRAYER FOR RELIEF

**WHEREFORE**, on behalf of the MLA Federal Refund Access Class, MLA Excessive MAPR Class, and the MLA Waiver of Rights Class, Plaintiff prays for judgment against Defendants, jointly and severally, as follows:

a. That the Court determine that this action may be litigated as a class action and that Plaintiff and his counsel be appointed class representative and class counsel, respectively;

b. That the Court enter judgment against Defendants and in favor of Plaintiff and the Classes on all counts;

c. That the Court find and declare that Defendants' standard form loan agreements entered into with Plaintiff, the MLA Federal Refund Access Class, MLA Excessive MAPR Class, and the MLA Waiver of Rights Class Members violate the MLA;



TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

d. That the Court find and declare that Defendants violated the MLA and award Plaintiff and MLA Federal Refund Access Class, MLA Excessive MAPR Class, and the MLA Waiver of Rights Class Members actual damages of not less than $500 per violation pursuant to 10 U.S.C. § 987(f)(5)(A)(i);

e. That the Court award Plaintiff and MLA Federal Refund Access Class, MLA Excessive MAPR Class, and the MLA Waiver of Rights Class Members punitive damages pursuant to 10 U.S.C. § 987(f)(5)(A)(ii);

f. An order awarding Plaintiff and MLA Federal Refund Access Class, MLA Excessive MAPR Class and the MLA Waiver of Rights Class actual, statutory, and all other damages available by law, with pre- and post-judgment interest;

g. An order preventing Defendants from attempting to collect on any loans that violated the MLA from Plaintiff and the Class members;

h. That the Court enjoin Defendants from continuing to engage in unlawful lending practices in violation of the MLA;

i. That Defendants be required by this Court's Order to compensate Plaintiff's counsel for their attorneys' fees and costs of suit, and that Defendants be ordered to bear the cost of notice to the absent class members, as well as the administration of any common fund;

j. That the Court award reasonable attorneys' fees as provided by applicable law, including under the MLA, and/or applicable statutes or code of civil procedure;

k. That the Court award all costs of suit; and

l. That the Court award such other and further relief as the Court may deem just and proper.



TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

DATED this 6th day of May, 2026.

TOUSLEY BRAIN STEPHENS PLLC

By: */s/ Kim D. Stephens, P.S.*

Kim D. Stephens, P.S., WSBA #11984
kstephens@tousley.com
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
Telephone: 206.682.5600/Fax: 206.682.2992

PEIFFER WOLF CARR
KANE CONWAY & WISE LLP

Brandon M. Wise*
bwise@peifferwolf.com
Domenica M. Russo*
drusso@peifferwolf.com
One US Bank Plaza, Suite 1950
St. Louis, Missouri 63101
Telephone: 314.833.4827

ALMEIDA LAW GROUP

Victor J. Sandoval*
victor@almeidalawgroup.com
111 W Ocean Boulevard, Suite 426
Long Beach, California 90802
Telephone: 916.235.3616

David S. Almeida*
david@almeidalawgroup.com
849 W. Webster Ave.
Chicago, Illinois 60614
Telephone: 916.235.3616

*to seek admission *pro hac vice*

*Attorneys for Plaintiff and the Proposed Classes*