THE HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| PAUL ALLEN PEREZ, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>JACKSON HEWITT, INC. and REPUBLIC BANK & TRUST COMPANY,<br><br>Defendants. | No.: 2:26-cv-01545-RAJ<br><br>DEFENDANT REPUBLIC BANK & TRUST COMPANY'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT<br><br>**NOTE ON MOTION CALENDAR:** SEPTEMBER 18, 2026<br><br>ORAL ARGUMENT REQUESTED |



K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

# TABLE OF CONTENTS


Introduction ........ 1

Factual Background ........ 3

Argument ........ 5

I. Legal Standard ........ 5

II. Perez's three claims under the MLA against Republic Bank should be dismissed. ........ 6

A. Perez's claim for unlawful account access and refund interception fails because the account access about which Perez complains is lawful under the MLA. ........ 7

B. Perez's excessive MAPR claim fails because Perez attempts to add costs and fees that are not properly included in the MAPR calculation to assert that this interest rate was "excessive." ........ 8

1. The NFTRA did not violate the MLA because it is not consumer credit, and is not subject to any finance charges or fees. ........ 11

2. Perez's ETRA does not violate the MLA because the finance charges did not exceed the MLA's 36% MAPR threshold. ........ 12

3. Jackson Hewitt's Tax Preparation Fee is properly excluded from the MAPR calculation. ........ 13

4. The fee for the Assisted Refund is properly excluded from the MAPR calculation. ........ 14

C. Perez's claim that Republic Bank violated the MLA by requiring arbitration fails because the arbitration clause expressly carves out borrowers, like Perez, covered by the MLA. ........ 16

Conclusion ........ 17

Certification of Meet and Confer ........ 17




K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .......... 6

*Basile v. H & R Block, Inc.*,
897 F. Supp. 194 (E.D. Pa. 1995) .......... 15

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) .......... 6

*Gibson v. City of Portland*,
165 F.4th 1265 (9th Cir. 2026) .......... 6

*Household Credit Servs., Inc., v. Pfennig*,
541 U.S. 232 (2004) .......... 13

*Huertas v. Foulke Mgmt. Corp.*,
No. 20-3443, 2021 WL 5755081 (3d Cir. Dec. 3, 2021) .......... 14

*Loper Bright Enters. v. Raimondo*,
603 U.S. 369 (2024) .......... 8

*N. Star Int'l v. Arizona Corp. Comm'n*,
720 F.2d 578 (9th Cir. 1983) .......... 5

*Paulsen v. CNF Inc.*,
559 F.3d 1061 (9th Cir. 2009) .......... 6

*Poulin v. Balise Auto Sales, Inc.*,
647 F.3d 36 (2d Cir. 2011) .......... 13

*Sales Creators, Inc. v. Little Loan Shoppe, LLC*,
150 Wn. App. 527, 208 P.3d 1133 (2009) .......... 17

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
551 U.S. 308 (2007) .......... 6, 10

*Tripp v. Charlie Falk's Auto Wholesale Inc.*,
290 F. App'x 622 (4th Cir. 2008) .......... 14



K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

*Veale v. Citibank, F.S.B.*,
85 F.3d 577 (11th Cir. 1996) ....................15

*Virachack v. Univ. Ford*,
410 F.3d 579 (9th Cir. 2005) ....................10, 14

**Statutes**

10 U.S.C. § 987....................2

10 U.S.C. § 987(b) ....................9, 11

10 U.S.C. § 987(e)(5)....................7

**Other Authorities**

12 C.F.R. § 1005.2(b)(1)....................2, 14

12 C.F.R. § 1026, cmt. 4(a)-1 (2011)....................10

12 C.F.R. § 1026.2(a)(20)(i) ....................9

12 C.F.R. § 1026.4(a)....................10, 11, 12, 13, 15

32 C.F.R. § 232.3(f)(1) ....................11

32 C.F.R. § 232.3(n) ....................10

32 C.F.R. § 232.4(c)(1)(i) ....................9

32 C.F.R. § 232.4(c)(1)(ii)....................9

32 C.F.R. § 232.4(c)(1)(iii)....................9

32 C.F.R. § 232.8(e)(1)....................7, 8

32 C.F.R. § 232.8(e)(3)....................7, 8

Military Lending Act Limitations on Terms of Consumer Credit Extended to Service Members and Dependents, 81 FR 58840-01, 2016 WL 4474980 (Aug. 26, 2016)....................17

Military Lending Act Limitations on Terms of Consumer Credit Extended to Service Members and Dependents 82 FR 58739-01, 2017 WL 6368550 (Dec. 14, 2017) ....................8



K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

Fed. R. Civ. P. 8(a)(2) ........................................................................................................5



K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

## INTRODUCTION

Defendant Jackson Hewitt, Inc. ("Jackson Hewitt") offers tax-preparation services to its customers for a fee. Because many taxpayers prefer not to wait to receive their tax refunds, Jackson Hewitt also helps customers promptly receive a portion of their anticipated refunds by providing access to short-term consumer loans from third-party lenders like Defendant Republic Bank & Trust Company ("Republic Bank"). And so for the 2024 tax year, Republic Bank offered Jackson Hewitt's customers access to two distinct short-term loans—an Early Tax Refund Advance Loan ("ETRA") and a No Fee Tax Refund Advance Loan ("NFTRA"). Republic Bank independently offered Jackson Hewitt customers the option to purchase an additional product called an Assisted Refund, a separate and distinct deposit account product and service that allows a customer to establish a temporary account at Republic Bank from which Republic Bank will process direct deposits of tax refunds and payment of tax preparation fees.

Plaintiff Paul Allen Perez ("Plaintiff" or "Perez") prepared and filed his 2024 tax return using Jackson Hewitt's tax services. Perez also elected to apply for an ETRA with Republic Bank on December 16, 2024. *See* Declaration of William Nelson (the "Nelson Decl.") ¶ 3, Ex. A (the "December Loan Documents"). Within a few days, Perez received a $500 counteroffer for this ETRA, with a finance charge of $36.95 (35.96% APR), which he accepted. *See* Nelson Decl. ¶ 6, Ex. B (the "Counteroffer").

Two months after receiving his ETRA, Perez completed his tax return with Jackson Hewitt and applied for an NFTRA loan in the amount of $1,500.00 on February 19, 2025. *See* Nelson Decl. ¶ 7, Ex. C (the "February Loan Documents"). This NFTRA was optional, and it had no interest or any other charges. Republic Bank approved Perez's application for the NFTRA loan on February 19, 2025. *See* Nelson Decl. ¶ 10, Ex. D (the "NFTRA Notification").



K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

Perez separately requested and received an Assisted Refund from Republic Bank at this time, though again he was not required to do so. The Assisted Refund product authorized Republic Bank to establish a temporary account on Perez's behalf for the purpose of processing the direct deposit of his refund from the IRS and state taxing authorities, and to pay any tax preparation fees owed to Jackson Hewitt. *See* February Loan Documents at 9. Per the terms of the December Loan Documents and the February Loan Documents, the Assisted Refund was an optional deposit product and was not a loan.[1] *See, e.g.,* December Loan Documents at 3, 6, 8, 12; February Loan Documents at 3, 8, 9. Perez was not required to obtain an Assisted Refund to obtain the loans, and he could have requested an Assisted Refund without obtaining loans. February Loan Documents at 8-9. Perez agreed to pay a total of $54.95 for this Assisted Refund product and service. December Loan Documents at 8, 9, 12; February Loan Documents at 8-9.

In sum, Perez chose to obtain four distinct products in connection with his 2024 tax return: (1) an NFTRA loan of $1,500, with no finance charge or cost; (2) an ETRA loan of $500, with an ETRA finance charge of $36.95 (or 35.96% APR); (3) tax return preparation services by Jackson Hewitt at the cost of $466.00; and (4) an Assisted Refund product and service for processing the direct deposit of his refund, with a transfer fee of $54.95. *See* December and February Loan Documents; NFTRA Notification.

As an active-duty member of the United States Navy, Perez now brings this putative class action lawsuit claiming that the services provided by Jackson Hewitt and Republic Bank violated the Military Lending Act (the "MLA," 10 U.S.C. § 987) in three different ways. Perez's claims against Republic Bank fail as a matter of law. *Count I*, asserting "Unlawful Security Interest / Account Access," fails because the MLA expressly permits

---

[1] The Assisted Refund is a deposit product governed by the Electronic Fund Transfer Act and Regulation E, which regulate deposit product transactions. *See* 12 C.F.R. § 1005.2(b)(1).



K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

the account access about which Perez complains. *Count II,* asserting that the costs and fees charged separately by Jackson Hewitt (for tax preparation services) and separately by Republic Bank (for the separate ETRA loan and the Assisted Refund product) collectively exceed what is allowed by the MLA, fails because the fees for such separate and distinct products are not necessary to the extension of credit and are payable in comparable cash transactions and therefore are not finance charges that are included in the MAPR calculation. *Count III*, which asserts that the arbitration provision in the agreement between Republic Bank and Perez violates the MLA, fails because the arbitration provision does not apply to active-duty service members like Perez, and Republic Bank has not even attempted to enforce it.

## FACTUAL BACKGROUND

Perez prepared and filed his 2024 tax return with Jackson Hewitt. Compl. ¶ 85. He agreed to pay Jackson Hewitt a $466 fee for those services. *See* February Loan Documents at 6.[2] There is no allegation that this Jackson Hewitt tax preparation fee varied in any respect based on Perez's other decisions to apply for loans with Republic Bank in connection with any tax refunds, and there is no basis for any such allegation.

Rather than await his anticipated refund, Perez separately elected to apply for and obtain an ETRA and NFTRA from Republic Bank. Compl. at ¶¶ 86-87. He applied for a $1,500 ETRA on December 16, 2024, before he had prepared tax returns. *See* Nelson Decl. at ¶¶ 3, 7; *see also* December Loan Documents at 11. Republic Bank made a counteroffer to Perez on or about December 17, 2024, which advised Perez that he had been approved for a lower ETRA loan amount of $500 subject to a Finance Charge of $36.95, at an Annual Percentage Rate of 35.96%, with a total of $536.95 due in a single payment upon receipt of

[2] The Complaint incorrectly alleges a tax preparation fee of $360, *see* Compl. ¶ 97, but the difference is immaterial to this motion.



K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

Mr. Perez's 2024 tax refund from the IRS or relevant state taxing authority. *See* Counteroffer.[3] Perez accepted this counteroffer for the ETRA and received the funds. Nelson Decl. ¶ 6.

Two months after he received his ETRA, Perez applied for an NFTRA Loan in the amount of $1,500.00 on February 19, 2025. *Id.* ¶ 7; February Loan Documents. Republic informed Perez: "There is no finance charge or annual percentage rate ('APR')" for the NFTRA, and "[t]here are no other fees assessed." February Loan Documents at 1. There is no allegation that Perez ever paid a "finance charge or annual percentage rate," or that there were ever "other fees assessed" in connection with this NFTRA Loan—and indeed, there were not. Republic Bank approved Perez's application for the NFTRA Loan on February 19, 2025, and disbursed the funds. Nelson Decl. ¶ 10; NFTRA Notification.

Perez also chose to apply for an Assisted Refund with Republic Bank. Nelson Decl. ¶ 7; February Loan Documents at 9. The Assisted Refund is not a loan. Instead, by selecting the Assisted Refund, Perez authorized Republic Bank to establish a temporary account on his behalf and in his name for the purpose of processing the direct deposit of his tax refund from the IRS and state taxing authorities and paying the Jackson Hewitt tax preparation fees. Nelson Decl. ¶ 7; February Loan Documents at 9. An Assisted Refund is not required to repay an ETRA or NFTRA, and a customer can apply for an Assisted Refund regardless of whether she or he applies for a loan. February Loan Documents at 8-9 ("**THE ETRA AND NFTRA MAY BE APPLIED FOR WITH OR WITHOUT RECEIVING AN AR.**") (emphasis in original). It is an optional product offered to customers to settle their tax preparation fees. February Loan Documents at 9; *see also* December Loan Documents

---

[3] The Complaint fails to reference the Counteroffer and incorrectly asserts that Perez obtained a $1,500 ETRA with a $110.85 finance charge, which equated to an annual percentage rate of 35.96%. Compl. ¶ 89. This discrepancy should not impact the resolution of this motion, however, because the ETRA that Perez received contained the same annual percentage rate of 35.96%.



K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

at 8 ("You may choose to receive your refund as an AR which is a fee-based product provided by Republic Bank. . . . If you choose an AR, your income tax return will be filed electronically and your refund will be direct deposited in a bank account established for one-time use only for the return. . . . [A]ll tax preparation fees and any other authorized fees/amounts may be deducted from your refund and forwarded to the appropriate authorized parties."). Perez agreed to pay a total of $54.95 for this Assisted Refund. Nelson Decl. ¶ 9.

Perez filed this putative class action seeking damages and statutory penalties based on the theory that the ETRA and NFTRA violated the MLA in three ways. First, Perez alleges that the defendants collectively violated Section 987(e)(5) of the MLA because, to facilitate repayment from his refund, he authorized Republic Bank to receive the refund in temporary accounts and apply funds to the repayment of the Loan principal. Compl. at ¶¶ 127-144. Second, Perez alleges that the ETRA and NFTRA's MAPR exceeded the statutory 36% cap in violation of Section 987(b). *Id.* at ¶¶ 145-159. Third and finally, Perez alleges that both defendants violated the MLA because the December Loan Documents and the February Loan Documents included an arbitration provision with a carve-out for service members like him. *Id.* at ¶¶ 160-178.

## ARGUMENT

### I. Legal Standard

"The purpose of a motion to dismiss under Rule 12(b)(6) is to test the legal sufficiency of the complaint." *See N. Star Int'l v. Arizona Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983) (citation omitted). A plaintiff must, at a minimum, provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This pleading requirement "'give[s] the defendant fair notice of what the . . . claim



K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations . . . a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . ." *Twombly*, 550 U.S. at 555 (internal citations omitted). A complaint will not suffice if it merely includes "naked assertion[s]" devoid of "further factual enhancement." *Id.* at 557; *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). Further, a plaintiff's failure to provide factual allegations sufficient to distinguish each defendant's alleged wrongful conduct from the other parties is grounds for dismissal. *Gibson v. City of Portland*, 165 F.4th 1265, 1287-88 (9th Cir. 2026) (summarily lumping allegations against "defendants" collectively insufficient to state a claim).

In deciding whether to dismiss a complaint under Rule 12(b)(6), a court may consider not only the allegations in the complaint, but also "documents incorporated into the complaint by reference." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). Courts need not accept as true conclusory allegations that are contradicted by documents incorporated into the complaint by reference. *Paulsen v. CNF Inc.*, 559 F.3d 1061, 1071 (9th Cir. 2009).

## II. Perez's three claims under the MLA against Republic Bank should be dismissed.

Perez alleges three causes of action against Republic Bank under the MLA, but all of them fail to state a claim and should be dismissed under Rule 12(b)(6).



K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

### A. Perez's claim for unlawful account access and refund interception fails because the account access about which Perez complains is lawful under the MLA.

Count I complains about Republic Bank's tax refund processing procedures that are explicitly allowed by the MLA's governing regulations. Section 987(e)(5) of the MLA makes it unlawful for "any creditor to extend consumer credit" where the creditor "uses a check or other method of access to a deposit, savings, or other financial account maintained by the borrower." 10 U.S.C. § 987(e)(5). Plaintiff alleges in Count I that the ETRA violated this provision because it allowed "direct access to the borrower's refund proceeds and deposit-account infrastructure" through the temporary account that Republic Bank set up to receive Perez's refund. Compl. ¶ 139.

The governing regulations interpreting Section 987(e)(5) confirm that the account access about which Perez complains is lawful. The regulations provide that a "creditor may . . . [r]equire an electronic fund transfer to repay a consumer credit transaction" and can "take a security interest in funds deposited after the extension of credit in an account established in connection with the consumer credit transaction," unless otherwise prohibited by law. 32 C.F.R. §§ 232.8(e)(1), (e)(3). The Department of Defense, which promulgates the MLA's implementing regulations, has confirmed that the regulations "do[] not prohibit covered borrowers from granting a security interest to a creditor in the covered borrower's checking, savings, or other financial account, provided that it is not otherwise prohibited by other applicable law and the creditor complies with all other provisions of the MLA regulation, including the limitation on the MAPR to 36 percent." Military Lending Act Limitations on Terms of Consumer Credit Extended to Service Members and Dependents,



K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

82 FR 58739-01, 2017 WL 6368550, at *58740 (Dec. 14, 2017). This interpretative rule tracks the language of the MLA.[4]

This is precisely the transfer that Perez has outlined in his Complaint. The relevant agreements "require an electronic fund transfer to repay a consumer credit transaction." 32 C.F.R. §§ 232.8(e)(1), (e)(3). Jackson Hewitt customers like Perez who obtained an ETRA agreed to have their refunds transferred electronically to repay their short-term loan. *See* 32 C.F.R. § 232.8(e)(1). Republic Bank established temporary deposit accounts and facilitated the deposit of customers' refunds into those accounts "after the extension of credit." *See* 32 C.F.R. § 232.8(e)(3). Borrowers also granted Republic Bank a "security interest" in the portion of the refund that was used to repay the ETRA, but that was permissible under the regulation and thus lawful. *See* 32 C.F.R. § 232.8(e)(3). Perez preauthorized Republic Bank to have his refund sent to a temporary deposit account and preauthorized repayment of the ETRA. This transaction structure is typical of arrangements between customers and banks and is expressly permitted by the applicable regulations and by the DoD's interpretative rule. Thus, Perez has not plausibly alleged any violation of Section 987(e)(5) and Count I should be dismissed.

**B. Perez's excessive MAPR claim fails because Perez attempts to add costs and fees that are not properly included in the MAPR calculation to assert that this interest rate was "excessive."**

Count II fares no better. Here, Perez relies on Section 987(b) of the MLA, which makes it unlawful for a "creditor" to "impose an annual percentage rate of interest greater than 36 percent with respect to the consumer credit extended to" an active-duty member of

---

[4] The Supreme Court's recent decision in *Loper Bright* supports the application of the interpretative rule here. *See Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 400 (2024) (noting that, when faced with a purported "statutory ambiguity," a court must still "independently interpret the statute" and "determine the best reading"). As detailed above, the interpretative rule directly explains the supposed "statutory ambiguity" at issue—the extent of permissible access under the MLA. The Court should adopt the interpretative rule's reasoning here as the "best reading" of the MLA.



K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

the military or a dependent of an active-duty member, to advance his so-called "Excessive MAPR" theory (referencing the "Military Annual Percentage Rate"). 10 U.S.C. § 987(b); Compl. at ¶¶ 145-159. Count II is fatally flawed because the ETRA has an annual percentage rate of 35.96%—an APR lower than the 36% threshold imposed by the MLA—and the NFTRA has no annual percentage rate or any other finance charges. Simply put, for the ETRA, the stated MAPR of 35.96% is the actual MAPR and, for the NFTRA, the stated MAPR of 0% is the actual MAPR.

Recognizing that the interest and charges associated with these loans are both below the MLA's 36% threshold, Perez attempts to combine separate costs and fees associated with separate services provided by Jackson Hewitt and Republic Bank at separate times to cross the 36% statutory threshold. But these costs and fees are not properly included in the MAPR, and therefore his theory fails as a matter of law.

The MLA's implementing regulations lay out three categories of fees to calculate the MAPR, but only one is relevant here. The first category includes "[a]ny credit insurance premium or fee, any charge for single premium credit insurance, any fee for a debt cancellation contract, or any fee for a debt suspension agreement." 32 C.F.R. § 232.4(c)(1)(i). The second includes "[a]ny fee for a credit-related ancillary product sold in connection with the credit transaction for closed-end credit or an account for open-end credit." 32 C.F.R. § 232.4(c)(1)(ii). The third includes (A) "[f]inance charges associated with the consumer credit," (B) certain application fees charged to a consumer who applies for consumer credit, and (C) certain fees charged in connection with open-end credit that are not relevant here because the ETRA does not involve open-end credit.[5] 32 C.F.R.

[5] The MLA regulation defines "open-end credit" by reference to that definition under Regulation Z, which defines the term as meaning, in relevant part, credit extended under a plan in which the creditor "reasonably contemplates repeated transactions." 12 C.F.R. § 1026.2(a)(20)(i). The ETRA (and the NFTRA) involve a single extension of credit and no repeat transactions.



K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

§ 232.4(c)(1)(iii). Perez's claims rely only on this third category, asserting that certain "fees and charges are imposed incident to, and as a condition of, the extension of consumer credit and therefore must be included in the MAPR calculation under the MLA." Compl. at ¶ 155; *see also* 12 C.F.R. § 1026.4(a) (defining "finance charge" to include charges which are "incident to or a condition of the extension of credit.").

The MLA regulations adopt the definition of "finance charge" from Regulation Z of TILA. 32 C.F.R. § 232.3(n). Under Regulation Z, the "finance charge" is:

> "…[T]he cost of consumer credit as a dollar amount. It includes any charge payable directly or indirectly by the consumer and imposed directly or indirectly by the creditor as an incident to or a condition of the extension of credit. *It does not include any charge of a type payable in a comparable cash transaction*."

12 C.F.R. § 1026.4(a) (emphasis added). Because of this "comparable cash transaction" language, where the price paid is "the same on credit or cash terms," there is no finance charge. *Virachack v. Univ. Ford*, 410 F.3d 579, 582 (9th Cir. 2005).[6]

Here, Perez chose to obtain four distinct products in connection with his 2024 tax return: (1) an NFTRA loan of $1,500, with no finance charge or cost; (2) an ETRA loan of $500, with an ETRA finance charge of $36.95 (or 35.96% APR); (3) tax return preparation services by Jackson Hewitt at the cost of $466.00; and (4) an Assisted Refund product and service for processing the direct deposit of his refund, with a transfer fee of $54.95. *See* December Loan Documents; February Loan Documents; NFTRA Notification.[7]

[6] The CFPB's Official Interpretation of Regulation Z is in accord. *See* 12 C.F.R. § 1026, cmt. 4(a)-1 (2011) ("Charges imposed uniformly in cash and credit transactions are not finance charges").

[7] The Court may consider the documents provided to Perez in connection with the loans and other services at issue because they are "documents incorporated into the complaint by reference." *See* Compl. at ¶¶ 87–101 (describing Perez's agreement with Republic Bank); *Tellabs*, 551 U.S. at 322.



K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

Under the plain language of Regulation Z, *only one* of the fees, costs, or charges associated with the products and services Perez obtained from the defendants is properly included in the MAPR calculation: the $36.95 finance charge associated with Perez's ETRA. Because this finance charge imposed an APR lower than the 36% threshold set by the MLA, neither Perez's ETRA nor any of the other products or services he selected violated the MLA.

1. *The NFTRA did not violate the MLA because it is not consumer credit, and is not subject to any finance charges or fees.*

Inasmuch as Perez's Complaint seeks relief based on the NFTRA, those claims fail as a threshold matter because the MLA does not apply to the NFTRA. The MLA applies only if the transaction constitutes "consumer credit extended" to a covered borrower, 10 U.S.C. § 987(b), and "consumer credit" is credit that is either "(i) [s]ubject to a finance charge; or (ii) [p]ayable by a written agreement in more than four installments." 32 C.F.R. § 232.3(f)(1). The NFTRA meets neither test.

First, the NFTRA is repaid in full in upon receipt of the tax refund. Repayment is "due upon receipt of your 2024 tax refund from the IRS and/or state taxing authority." *See* December Loan Documents at 6 (NFTRA Loan Information Page). Because this is fewer than four installments, that prong of the "consumer credit" definition in 32 C.F.R. § 232.3(f)(1) is not satisfied.

Second, Plaintiff does not and cannot allege that the NFTRA loan he agreed to includes any finance charge. As noted above, a finance charge is what it costs a consumer to borrow money. *See* 12 C.F.R. §1026.4(a). Finance charges include interest and sometimes fees imposed as a condition for the extension of credit. *See* 12 C.F.R. §1026.4(a). The Notice Concerning Refund Anticipation Loan Disclosures & Fee Schedule in Perez's February Loan Documents expressly states that the NFTRA is subject to "$0" in "Finance



K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

Charge[s]." *See* February Loan Documents at 1. It further confirms that "[t]here are no other fees assessed" in relation to the NFTRA. *Id.* Plaintiff nowhere alleges any charge of the no-fee NFTRA that causes the NFTRA to exceed the MAPR. Nor could he. This loan is plainly not subject to any "finance charges" because there are no interest, fees, or any other "charge[s] payable directly or indirectly by the consumer and imposed directly or indirectly by the creditor as an incident to or a condition of the extension of credit." 12 C.F.R. § 1026.4(a). For this reason, the NFTRA does not satisfy the first prong of the "consumer credit" definition in 32 C.F.R. § 232.3(f)(1) and the NFTRA does not meet the definition of "consumer credit" covered by the MLA.

Because the NFTRA is not "subject to a finance charge" and is also not "payable [] in more than four installments," the MLA does not apply to that loan. And, even if the MLA applied to the NFTRA, the NFTRA would not violate the MLA's interest rate threshold because the loan had no interest or other finance charges. *See* December Loan Documents at 6 (reflecting $0 finance charge and $0 APR for the NFTRA).

2. *Perez's ETRA does not violate the MLA because the finance charges did not exceed the MLA's 36% MAPR threshold.*

While the ETRA did have a finance charge, the loan complied with the MLA because the MAPR did not exceed 36%. *See* December Loan Documents at 1 (reflecting 35.96% estimated APR); *see also* Counteroffer (reflecting $35.96% APR). Perez incorrectly alleges that he paid a $110.85 finance charge for a $1,500 loan, which would equate to a 35.96% APR. Compl. ¶ 87. In reality, Perez was offered (and accepted) a $500 ETRA, which was subject to a $36.95 finance charge (reflecting a 35.96% APR). *See* Counteroffer. Under Plaintiff's incorrect allegations or the reality reflected in the loan documents, no finance charge associated with the ETRA exceeded the 35.96% APR identified in the December Loan Documents. And Perez knows this, which is why he improperly attempts



K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

to include other "fees" in the MAPR calculation. But, as set forth below, none of the other fees Perez identifies are actually "finance charges" under Regulation Z.

3. *Jackson Hewitt's Tax Preparation Fee is properly excluded from the MAPR calculation.*

Perez attempts to allege a MAPR that exceeds the MLA's 36% threshold on the loans that he received from Republic Bank by including Jackson Hewitt's separate tax preparation fees in his MAPR calculation. Compl. at ¶ 97-98. The MLA does not allow for that. The fee that Jackson Hewitt charged for tax preparation services is not a finance charge because it is for the separate service of preparing tax returns. A tax preparation fee, however, is not "incident to or a condition of the extension of credit." 12 C.F.R. § 1026.4(a). The Supreme Court has explained that "the phrase 'incident to or in conjunction with' implies some ***necessary connection*** between the antecedent and its object, although it 'does not place beyond rational debate the nature or extent of the required connection.'" *Household Credit Servs., Inc., v. Pfennig*, 541 U.S. 232, 240–41 (2004) (citing *Holly Farms Corp. v. NLRB*, 517 U.S. 392, 403 n.9 (1996)) (emphasis added). Because Perez would have paid Jackson Hewitt's tax preparation fee to have his return prepared and submitted regardless of whether he obtained loans from Republic Bank, the Jackson Hewitt fee is not a finance charge and must be excluded from the MAPR calculation.

Further, nowhere does Perez plausibly allege that the price of Jackson Hewitt's tax preparation fee changed if a customer obtained a loan or not. The fee for preparing a customer's tax return is not "charged to a credit customer, *solely because he is a credit customer*"—it is charged to all customers, regardless of whether they are credit customers. *Poulin v. Balise Auto Sales, Inc.*, 647 F.3d 36, 39 (2d Cir. 2011) (emphasis in original) (citation and internal quotation marks omitted) (noting that courts have found that a price increase charged to credit customers based solely on that credit customer status "triggers



K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

TILA's disclosure requirements"); *Huertas v. Foulke Mgmt. Corp.*, No. 20-3443, 2021 WL 5755081, at *2 (3d Cir. Dec. 3, 2021) (fees charged to both cash and credit customers are "not incident to the extension of credit and thus [are] not finance charges"). Perez does not and cannot allege that Jackson Hewitt customers who obtained loans from Republic Bank paid any more for the preparation of their tax returns than similarly-situated customers who did not obtain the loans. Whether Perez applied for and obtained the ETRA Loan, the NFTRA Loan, or did not apply for any loan, Jackson Hewitt was not going to prepare his tax returns for free. *Virachack*, 410 F.3d at 582 (explaining that where the price is the same for a product or service "on credit or cash terms," there is no finance charge); *Tripp v. Charlie Falk's Auto Wholesale Inc.*, 290 F. App'x 622, 628 (4th Cir. 2008) ("Because the [plaintiffs] have not produced evidence to refute [the defendant's] general practice of charging the $395 processing [fee] for both cash and credit transactions, we find that the $395 processing fee was not a 'finance charge.'").

4. *The fee for the Assisted Refund is properly excluded from the MAPR calculation.*

Even though the Assisted Refund fee is for an optional deposit product that is not necessary to obtain a loan, Perez attempts to include the fee for the Assisted Refund in his MAPR calculation. That is improper. Compl. at ¶¶ 97-98. The Assisted Refund product is an unbundled, independent, and optional additional product that is selected at the customer's discretion, and is independent of the ETRA or the NFTRA. *See* December Loan Documents at 3, 11–12; February Loan Documents at 3, 8-9.[8] Specifically, the December Loan Documents make clear that the Assisted Refund is not "necessary" for obtaining a loan—customers could apply for and receive an Assisted Refund regardless of whether they obtained a loan. *See* December Loan Documents at 12 (no requirement in Assisted Refund

[8] The Assisted Refund product and service is not a loan. It is a deposit product subject to the Electronic Fund Transfer Act and Regulation E. *See* 12 C.F.R. § 1005.2(b)(1).



K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

application to apply for a loan); *id.* at 8 (describing Assisted Refund as a separate, optional product to process tax refund and pay tax preparation fees). And conversely, customers who received loans did not need to apply for an Assisted Refund. *See id.* at 3 (ETRA Loan Information Page) ("To receive an [ETRA], you are not required to choose an Assisted Refund."); *id.* at 6 (NFTRA Loan Information Page) ("To receive an [NFTRA], you are not required to choose an Assisted Refund."). A fee one "can choose to avoid . . . is not imposed as an incident to [an] extension of credit." *Veale v. Citibank, F.S.B.*, 85 F.3d 577, 579 (11th Cir. 1996). Since Perez could have independently chosen *not* to pay the Assisted Refund fee and Republic Bank did *not* require it, then the Assisted Refund fee was *not* imposed as a necessary incident to the extension of credit and need *not* be included in the finance charge under the MAPR calculation. *Id.* (optional product or service selected by borrower not finance charge; affirming dismissal of complaint).

Further, the Assisted Refund fee is not a finance charge for the independent reason that it is "payable in a comparable cash transaction." 12 C.F.R. § 1026.4(a). Specifically, the price of the Assisted Refund fee did not change if a customer obtained a loan or not. *See* December Loan Documents at 8 ($54.95 for Assisted Refund). A customer who obtains an Assisted Refund product who never seeks an ETRA or NFTRA loan purchases the identical Assisted Refund product for the identical $54.95 fee.[9] In that regard, the payment by Perez of $54.95 is the exact same price that other Jackson Hewitt customers are required to pay to obtain the same Assisted Refund product without an ETRA or NFTRA loan. *See id.* Thus, the fee was "payable in a comparable cash transaction" and is not a finance charge. 12 C.F.R. § 1026.4(a); *see also Basile v. H & R Block, Inc.*, 897 F. Supp. 194, 198 (E.D. Pa. 1995) (finding that fee for electronic filing service in connection with a tax refund

---

[9] To be sure, nowhere does Perez plausibly allege that the price of Assisted Refund fee changed if a customer obtained a loan or not.



K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

anticipation loan was comparable cash transaction where tax preparer offered electronic filing service for the same fee as for the anticipation loan service).

* * * *

Ultimately, while Perez selected and paid for various services and products from Jackson Hewitt and Republic Bank, only one of these products (the ETRA) was subject to a finance charge. Perez's attempt to bundle all of the charges for these various and independent services provided by separate businesses for the purposes of the MLA is not only incorrect, but also makes no sense because this approach would harm service members and their families. If all such fees were to be included in the MAPR, that would mean that *most* Jackson Hewitt customers could obtain ETRA and NFTRA loans, but that miliary members who pay for unrelated services (such as Republic's Assisted Refund product and service, or Jackson Hewitt's tax preparation service) could not.

**C. Perez's claim that Republic Bank violated the MLA by requiring arbitration fails because the arbitration clause expressly carves out borrowers, like Perez, covered by the MLA.**

The final claim—relating to an arbitration clause that does not apply to Perez and has not been enforced—is also meritless, and so Count III should be dismissed. Section 16.H of the December Loan Documents and February Loan Documents states that the arbitration provision "does not apply (i) to 'covered borrowers' as defined by the Military Lending Act." *See* December Loan Documents at 16 (Section 16.H); February Loan Documents at 13 (Section 16.H). Perez is a "covered borrower" and so this arbitration term does not apply to him. No party has even attempted to enforce this clause against Perez, and this case remains in federal court. The claim should be dismissed.

Further confirming that dismissal is appropriate, the Department of Defense has found in an interpretive rule that creditors may permissibly use a "savings clause" like the one used by Republic Bank here to exclude covered borrowers from prohibited notice,



K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

waiver, arbitration, or other terms that would otherwise apply to non-covered borrowers. *See* Military Lending Act Limitations on Terms of Consumer Credit Extended to Service Members and Dependents, 81 FR 58840-01, 2016 WL 4474980, at *58844 (Aug. 26, 2016).

Perez's allegations that the saving clause is ineffective because it was "buried" and not separately disclosed in the signature block (*see* Compl. at ¶¶ 170-176) is meritless. The language at issue appears in the contract, and both parties agreed to it. *See* December Loan Documents at 16 (Section 16.H). As a matter of black-letter contract law, the arbitration term does not apply to him. *See Sales Creators, Inc. v. Little Loan Shoppe, LLC*, 150 Wn. App. 527, 531, 208 P.3d 1133 (2009) ("In interpreting an arbitration clause, the intentions of the parties as expressed in the contract control . . . A reviewing court ascertains the parties' intent from reading the contract as a whole, and will not read ambiguity into a contract that is otherwise clear.") (citations omitted). Perez's contrary position would punish creditors for including MLA-protective language designed to avoid the *very imposition* of arbitration and waiver provisions that give rise to Perez's Count III.

## CONCLUSION

For these reasons, Defendant Republic Bank & Trust Company respectfully requests that the Court dismiss Plaintiff's Complaint with prejudice pursuant to Federal Rule of Civil Procedure 12(b)(6).

## CERTIFICATION OF MEET AND CONFER

On Thursday, August 13, 2026, counsel for all parties met and conferred via videoconference regarding Republic Bank's intended motion to dismiss. The parties participated in good faith, discussed the substance of Republic Bank's anticipated motion, and were not able to reach a resolution of the planned motion. *See* Declaration of Peter A. Talevich.



K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

DATED August 17, 2026.

I certify that this memorandum contains 5,701 words, in compliance with the Civil Local Rules

K&L GATES LLP

By: s/ Peter A. Talevich

Peter A. Talevich, WSBA #42644
925 Fourth Avenue, Suite 2900
Seattle, WA 98104
Telephone: (206) 623-7580
Email: peter.talevich@klgates.com

Attorney for Defendant Republic Bank and Trust Company

**CERTIFICATE OF SERVICE**

I, Peter A. Talevich, certify that on August 17, 2026, I caused the foregoing document to be electronically filed with the Clerk of the Court using the CM/ECF system, which will automatically send email notification of such filing to the registered parties of record.

Dated August 17, 2026.

s/ Peter A. Talevich
Peter A. Talevich, WSBA #42644
K&L Gates LLP
925 Fourth Avenue Suite 2900
Seattle, WA 98104
Telephone: (206) 623-7580
Email: peter.talevich@klgates.com